IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02265-PSF-CBS

HOLLY PATTON, f/k/a Holly Stamper,

    Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

    Defendant.

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Allstate Property and Casualty Insurance Company ("Allstate") (Dkt. # 22) on March 24, 2006, and Plaintiff Holly Patton's Cross Motion for Summary Judgment (Dkt. # 30) filed April 18, 2006.  Plaintiff's cross motion also included her response to the defendant's motion for summary judgment.  Defendant filed its combined reply to plaintiff's response and its response to plaintiff's cross motion on April 28, 2006 (Dkt. # 31).  Plaintiff filed her reply brief in support of her cross motion on May 8, 2006 (Dkt. # 32).  An Amended Final Pretrial Order was filed on December 13, 2006 (Dkt. # 46).  This matter is set for a three-day jury trial commencing February 26, 2007.

**I.    BACKGROUND**

This case arises from an automobile accident that occurred on November 18, 2002, when Plaintiff Patton, formerly known as Holly Stamper, was a passenger in a car driven by another person (Amended Final Pretrial Order, Stipulations at 3).  Plaintiff

was injured in the automobile accident suffering a fracture of the left humeral shaft, the bone between the shoulder and the elbow. Defendant Allstate was the plaintiff's personal injury protection ("PIP") insurance carrier at the time of the accident. Plaintiff subsequently received treatment for the fractured arm from Dr. Robert C. Schutt (Defendant's Motion at 1; Plaintiff's Cross Motion at 2).

Dr. Schutt's treatment note, dated November 22, 2002, states that plaintiff sustained a "clavicle and humerus fracture" that she was "currently in a fracture brace," but was "doing very well." The note further states that the "clavicle films show very minimal changes and the humerus appears to be aligned and rotated satisfactorily." Exhibit A to Defendant's Motion. Plaintiff followed up with Dr. Schutt on December 5, 2002. His treatment note of this date indicates that plaintiff "does have early stability in the fracture site." Exhibit B to Defendant's Motion. The note states that the treatment plan was to continue with the fracture brace for another month. *Id.*

On January 6, 2003, Plaintiff had a further follow up physical exam with Dr. Schutt. Dr. Schutt's notes of this visit indicate that plaintiff had good motion to her shoulder and elbow, that her arm was stable, and she was using it without pain or problems (Exhibit C to Defendant's Motion). He "[r]ecommended that she continue avoiding activities where she could potentially re-injure the arm." He provided her with a prescription for a fitness center and therapy, and stated that the plan was to "wean" her out of the fracture brace. Dr. Schutt also recommended a follow-up visit in two months with further x-rays at that time. *Id.* Plaintiff alleges that her treatment for the fractured arm was "initially paid for by Defendant." (Amended Complaint, ¶ 5).

Unfortunately, on January 12, 2003, as described by plaintiff, she slipped and placed her weight on her injured arm to control her fall, which caused the fracture to her humerus to fail and separate (Plaintiff's Cross Motion at 1). According to defendant, while plaintiff was at an event in Breckenridge on January 12, 2003, she fell and refractured her humerus (Defendant's Motion at 2). In any event, on January 13, 2003, plaintiff again saw Dr. Schutt. His treatment note states that plaintiff "was doing very well without any problems until January 12, 2003, when she slipped and re-fractured the shoulder." Exhibit D to Defendant's Motion.

On January 15, 2003, plaintiff underwent surgery for the fracture (Defendant's Motion at 2; Plaintiff's Cross Motion at 2). Dr. Schutt's surgical note states: "This patient had sustained a left humeral fracture while involved in a motor vehicle accident. She underwent initial non-operative treatment since the fracture appeared to be stable. It healed satisfactorily but then she subsequently fell and sustained a re-fracture with malalignment." Exhibit E to Defendant's Motion at 1. The note details the surgery performed by Dr. Schutt that day. Plaintiff apparently underwent surgery subsequently to remove surgical hardware from her arm (Plaintiff's Cross Motion at 2).

## II.     PLAINTIFF'S COMPLAINT

Plaintiff alleges that in connection with the surgery, and the followup care, she incurred medical expenses to different entities totaling approximately $17,095, which she submitted to defendant but which it has refused to pay under her PIP coverage (Amended Complaint, ¶¶ 7, 9). Plaintiff originally filed her complaint on October 11, 2005 in the El Paso County, Colorado District Court, but on November 8, 2005,

defendant removed the case to federal court asserting diversity of citizenship as the basis for jurisdiction (Dkt. # 1). Because plaintiff's civil cover sheet claimed she was seeking a monetary judgment in excess of $100,000, defendant asserted the jurisdictional amount was met (Dkt. # 1 at 2).  Plaintiff complaint avers claims for breach of contract (First Claim); bad faith breach of contract (Second Claim); willful and wanton violations of the now repealed Colorado Auto Accident Reparations Act, formerly codified at C.R.S. § 10-4-701, *et seq*. ("No-Fault Act"), for which she claims treble damages (Third Claim); and for willful and wanton violations of unspecified sections of the Colorado Consumer Protection Act ("CCPA") and the Unfair Claims Settlement Practices Act, for which she also claims treble damages.

### III.  THE PENDING MOTIONS

Defendant asserts that plaintiff is not entitled to any further PIP benefits under her policy.  The plaintiff's policy contains the following pertinent language regarding PIP benefits:

> If a premium is shown on the Policy Declarations for Personal Injury Protection, Allstate will pay to or on behalf of the injured person the following benefits In accordance with the Act and subject to the limits as specified in the Limits of Liability provision.  Payments will be made only when bodily injury is caused by an accident arising from the use of a motor vehicle.[1]

Exhibit G to Defendant's Motion at 1-2.  Defendant asserts that the second accident in which plaintiff refractured her humerus was independent and unrelated to her November 2002 automobile accident (Defendant's Motion at 4).  In support of its

---

[1] The policy elsewhere defines the referenced "Act" as the Colorado Auto Accident Reparations Act  (Exhibit G at 2), the basis for plaintiff's second claim for relief.

4

position defendant cites to deposition testimony provided by Dr. Schutt who testified, *inter alia*, that "[i]f she [plaintiff] had not slipped and fell and re-fractured her arm, she would not have needed surgery" and "she should have continued to heal and not have needed surgery." Deposition of Dr. Schutt, Exhibit F to Defendant's Motion, at 15. He further testified that when he saw her on January 6, 2003, he anticipated that within three to five days she would be done with the brace and that he did not anticipate that she would ever need surgery on her humerus (*id.* at 11, 13). Therefore, defendant argues, plaintiff's injuries for which she now seeks compensation did not arise from the use of a motor vehicle as provided in the policy (*id.* at 8). Additionally, defendant contends that because it was within its rights to deny plaintiff PIP benefits, there is no basis for plaintiff's claim of bad faith and therefore the other claims should also be dismissed. *Id.* at 9.

Plaintiff opposes defendant's motion for summary judgment and cross moves for summary judgment in her own behalf, arguing that defendant breached the insurance contract because her second injury arose from the injury originally suffered in the automobile accident, citing to other deposition testimony given by Dr. Schutt. In response to questions from plaintiff's counsel regarding an opinion letter he provided, Dr. Schutt testified that "I think my opinion, and I don't know exactly if the wording is exactly right in the letter, but I don't believe that she [plaintiff] would have sustained the second fracture if she hadn't have had the first fracture there, because she fractured right to the same site in a bone that had - - was in a vulnerable state." Schutt Deposition, Exhibit 1, part 2 to Plaintiff's Cross Motion, at 38-39).

The letter referenced in the deposition, a May 5, 2003 report by Dr. Schutt, is attached as Exhibit 4 to Plaintiff's Cross Motion. In its entirety the body of the letter states:

> Holly Stamper sustained a left humerus fracture in a motor vehicle accident. She subsequently re-fractured this. The re-fracture would not have occurred if the first fracture wasn't present. The patient had an incompletely healed fracture when the second fracture occurred.
>
> As a result, it would be my opinion that the second fracture she sustained was directly related to the motor vehicle accident causing the primary fracture that never completely healed to her left humerus.

Further, Plaintiff contends that defendant acted unreasonably and in bad faith when it willfully and wantonly denied her PIP benefits for the second injury. In support of this argument submits the opinion of an expert witness to the effect that defendant's conduct was unreasonable, and a breach of its duty of good faith (Exhibit 3 to Plaintiff's Cross Motion).

### IV.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995). In other words, for the case to continue, "there must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions,

answers to interrogatories, admissions and affidavits. F.R.Civ.P. 56(c). When applying this standard, a court must view the factual record in the light most favorable to the nonmovant. *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks and citation omitted).

**V.     ANALYSIS**

The determinative question presented in this case is whether the language in plaintiff's insurance policy covers plaintiff's injury to her left humerus that occurred on January 12, 2003. While there is no dispute that plaintiff suffered an injury to her left humerus on that date, the question is whether the record contains undisputed facts, which if viewed in a light most favorable to the plaintiff, would permit a jury to reasonably find that her bodily injury was caused by an accident "arising from the use of a motor vehicle" as required by the policy. If not, defendant's motion for summary judgment must be granted.

On the other hand, if the record contains undisputed facts, which if viewed in a light most favorable to the defendant, would necessarily require a jury to reasonably

find that her bodily injury was caused by an accident "arising from the use of a motor vehicle" as required by the policy, the plaintiff's cross motion for summary judgment must be granted.

As this case is before the Court based on diversity jurisdiction, the law of Colorado applies to determine these substantive legal questions. Colorado provides that the scope and interpretation of insurance policy language is generally a question of law for the court to decide. *See Smartt v. Nat'l Farmers Union Property and Cas. Co.*, 43 Colo. App. 195, 197, 605 P.2d 479, 480 (Colo. App. 1979). If an insurance policy is clear and unambiguous, it should be enforced according to its plain terms. *Nicholls v. Zurich Am. Ins. Group,* 244 F. Supp. 2d 1144, 1156 (D. Colo. 2003). The mere fact that the parties disagree about the meaning or scope of an insurance policy provision does not create an ambiguity. *Id.*

Defendant argues that *Smartt, supra*, is essentially dispositive of this case as its fact pattern is almost identical to the circumstances in the present case. In *Smartt,* the plaintiff was in an automobile accident in August 1975 resulting in a broken bone in her upper arm. 605 P.2d at 480. In February 1976, some six months later, she tripped in her bathroom, fracturing the same bone in her arm. *Id.* Although the Court of Appeals stated that there was no evidence to connect the "tripping" with the previous accident, plaintiff did submit a treating physician's affidavit indicating that the broken bone in her arm was afflicted with osteoporosis, a thinness of the bone, as a result of the 1975 fracture. Plaintiff contended that the osteoporosis was one of the causes of the subsequent fracture, and because the second injury was caused, or contributed to,

by the original accident, she was entitled to compensation from her auto insurer for the latter injury. The district court granted summary judgment for the insurer and the Court of Appeals affirmed.

In reaching this result, the Colorado Court of Appeals focused on the policy language there, that like the policy language in the instant case provided coverage for "bodily injury sustained by an eligible injured person caused by an accident arising out of the use or operation of a motor vehicle as a motor vehicle." *Smartt,* 605 P.2d at 480. The court found that there was no contention that the fall in the bathroom resulted from, or arose out of the operation or use of a motor vehicle. *Id.* Based on what it found to be unambiguous language of the policy, it held that the grant of summary judgment was proper. In support of its result the appellate panel:

> Although the previous automobile accident may have increased the likelihood that any subsequent accident might result in more extensive damages, the No Fault Act does not contemplate holding a personal injury protection carrier liable in perpetuity for the increased susceptibility to injury of an insured who once suffers injury in a covered accident.

*Id.*

While the decision in *Smarrt* would appear to be decisive of the instant case as defendant argues, plaintiff urges that subsequent decisions of the Colorado Court of Appeals dictate a different result. In *Loza v. State Farm Mutual Auto. Ins. Company*, 970 P.2d 478 (Colo. App. 1997), the court addressed a situation where the insured sought coverage for injuries sustained following an automobile accident that admittedly, in part, aggravated a preexisting condition. The insurer sought to apportion the PIP

coverage to cover only that portion of the post-accident damages that were arguably attributable to the accident. The Court of Appeals rejected such attempted apportionment. *Id.* at 481.

The instant case does not involve any issue of apportionment and the holding in *Loza* is not directly on point. But, plaintiff argues, the language of *Loza* is instructive here (Plaintiff's Cross Motion at 3; Plaintiff's Reply at 2-3), pointing out that *Loza* first stated that "[t]he purpose of the No-fault Act is to maximize, not minimize, insurance coverages, and to ensure that persons injured in automobile accidents are fully compensated. The No-fault Act is to be construed and applied to further its remedial and beneficent purposes." *Loza*, 970 P.2d at 481.

Second, *Loza* holds that the phrase "arising out of the use or operation of a motor vehicle," as used in the No-Fault Act, requires a "causal connection between the use of the motor vehicle and the injury" citing to *Truck Ins. Exch. v. Home Ins. Co.*, 841 P.2d 354 (Colo. App. 1992). In *Truck*, the driver of a truck was injured when he jumped to the ground from the truck bed to avoid being struck by a metal chlorine gas cylinder that was being loaded onto the truck he was driving. 841 P.2d at 355. The Court of Appeals found that the driver's injuries "flowed from the loading of the truck" as "[b]ut for the loading of the cylinder onto the truck, the injuries would not have occurred." *Id.* at 358.

Plaintiff also urges that the Court in *Loza* stated that "[t]he causal connection described as 'arising out of' is broader and more liberal than proximate cause as used in traditional tort law." In support of this statement, the *Loza* decision cited to *Kohl v.*

10

*Union Ins. Co.*, 731 P.2d 134 (Colo. 1986); *Azar v. Employers Cas. Co.*, 178 Colo. 58, 495 P.2d 554, 555 (Colo. 1972); and, *State Farm Mut. Auto. Ins. Co. v. McMillan*, 900 P.2d 1243 (Colo. App. 1994).

Plaintiff's citation to *Loza's* language asserting a broader and more liberal definition of the phrase "arising out of" is certainly accurate, but does not necessarily help plaintiff in this case. A review of the cases which *Loza* cites reveals that in each case the injury that was the subject of the insurance claim occurred on, or in proximity to, or in connection with, the use of a motor vehicle. In *Kohl*, the injuries occurred when the driver of the insured vehicle was removing his rifle from the gun rack inside his jeep to unload and secure it, but the rifle discharged seriously injuring two persons and killing one. 731 P.2d at 135. In *Azar*, another hunting accident occurred when the insured attempted to shoot rabbits from his insured automobile and accidentally shot his companion. 495 P.2d at 554. In *McMillan*, the driver of the insured auto was driving the car when she was struck by a bullet fired from another vehicle. 900 P.2d at 1244. Accordingly, although *Loza* holds that the meaning of "arising out of" the use of a motor vehicle is "broader and more liberal" than proximate cause as used in traditional tort law, it does not appear to be so broad or so liberal as to include an accident that occurs months after the use of a motor vehicle without any connection to the vehicle, just as the court held in *Smartt*.

In *Gonzalez v. City and County of Denver*, 998 P.2d 51, 54 (Colo. App. 1999) *aff'd* 17 P.3d 137 (Colo. 2001), another case cited by plaintiff, the Court of Appeals commented that the phrase "'[a]rising out of' has been defined as originating from,

11

growing out of, or flowing from." And, the opinion further states, as plaintiff appears to urge, that "[i]n order to establish the requisite causal relationship between the use of the vehicle and the injury in No-Fault cases, a claimant need only show that the accident would not have occurred but for the vehicle's use." *Id.*

Here, plaintiff has certainly made a showing that the second injury to her arm might not have occurred "but for" the broken arm she suffered in the earlier automobile accident. But that is not the test the above cases apply, nor is it the subject of the PIP coverage provided in her policy. Plaintiff's policy, in language parallel to that of the No-Fault Act, states that "[p]ayments will be made only when bodily injury is caused by an accident arising from the use of a motor vehicle." In other words, under the above cases in order to trigger coverage the test is whether the injury would not have occurred "but for" the involvement of a motor vehicle. The test is not merely whether the bodily injury results at least in part due to an earlier injury sustained in a motor vehicle accident. Here, plaintiff was in Breckenridge nearly two months after the auto accident elsewhere when she slipped and fell. There is no dispute that the bodily injury she suffered from her second broken arm was caused by an "accident" that occurred on January 12, 2003. But she has not shown, and does not even contend, that the second accident "arose from" the use of a motor vehicle, or that her second injury would not have occurred "but for" the involvement of a motor vehicle.

In *Loza*, the court found coverage because the automobile accident caused the insured's increased stress, which in turn exacerbated her condition of bruxism, or teeth grinding, resulting in the jaw injury known as TMD. 970 P.2d at 480. But in the instant

12

case, the motor vehicle accident caused only the original broken arm; it did not exacerbate a condition previously found in plaintiff.  Here, plaintiff cannot show that the second accident she suffered, which is the only one for which she now claims PIP benefits, "would not have occurred but for the" use of a vehicle.  *Gonzalez,* 998 P.2d at 54.

Furthermore, if the Court adopts plaintiff's argument for broadening PIP coverage to allow claims dealing with any subsequent injuries, even though their link to the initial motor vehicle accident is as remote from the subsequent injury as in the instant case, the result would run afoul of the holding in *Smarrt* that the No-Fault Act does not contemplate holding a PIP carrier liable in perpetuity for the increased susceptibility to injury of an insured who once suffers an injury in a covered accident. 605 P.2d at 480.

Finally, the Court notes that cases such as *Denver and Rio Grande Western R.R. Co. v. Conley,* 293 F.2d 612 (10th Cir. 1961) and *Powell v. Brady*, 30 Colo. App. 406, 496 P.2d 328 (Colo. App. 1972), which plaintiff in part relies on (Plaintiff's Cross Motion at 4), are inapposite to the situation here as they are based on claims of negligence and  not claims dependent on the application of insurance contract language as are plaintiff's  claims here.  Moreover, they involve actions of third-parties directly related to the plaintiffs' immediate treatment of their initial injuries, circumstances not applicable here.

Accordingly, for the reasons set forth above, the Court finds that summary judgment should be entered for defendant and against plaintiff as to her claim for

breach of the insurance contract and the claims under the No-Fault Act. Because those claims are dismissed, there is no remaining basis for plaintiff's claims for bad faith denial of coverage or for violation of the CCPA or the Unfair Claims Settlement Practices Act.

**CONCLUSION**

Defendant's Motion for Summary Judgment (Dkt. # 22) is GRANTED.

Plaintiff's Cross Motion for Summary (Dkt. # 30) is DENIED.

The Clerk of the Court is directed to enter judgment for the defendant and against plaintiff on all claims.

DATED: February 7, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge